COURT OF APPEALS
DECISION
DATED AND FILED

January 11, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1765**

STATE OF WISCONSIN

Cir. Ct. No. **2019CV66**

IN COURT OF APPEALS
DISTRICT II

ERIC A. NIELSEN,

  PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

  V.

BRIDLEWOOD ESTATES OF LAKE GENEVA CONDO OWNERS ASSOC., INC.,

  DEFENDANT-RESPONDENT-CROSS-APPELLANT.

        APPEAL and CROSS-APPEAL from a judgment of the circuit court for Walworth County:  DAVID M. REDDY, Judge.  *Affirmed*.

        Before Gundrum, P.J., Neubauer and Grogan, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. This case arises out of a dispute between a neighbor and a condominium association over conditions of a private road. The neighbor (Eric A. Nielsen) appeals from a judgment dismissing two of his claims relating to the improvement and maintenance of the road. Meanwhile, the condominium association (Bridlewood Estates of Lake Geneva Condo Owners Assoc., Inc.) cross-appeals, challenging a ruling regarding a gate in the road. For the reasons that follow, we affirm.

¶2     In 2014, Nielsen purchased a home in Walworth County. The deed to the home included an easement for "Ingress and Egress over Outlot 1, a/k/a Moelter Drive[.]" Outlot 1/Moelter Drive is an unpaved private road that intersects with a public road to the north and terminates in a dead-end cul-de-sac to the south. Nielsen's property runs alongside the northern portion of the road, commonly referred to as North Moelter.

¶3     Bridlewood Estates of Lake Geneva Condo Owners Assoc., Inc. (Bridlewood) is the owner of the private road at issue. It has not improved or maintained the portion of the road known as North Moelter, which runs north of its members' condominiums.[1] Accordingly, North Moelter has fallen into disrepair. From time to time, Bridlewood has placed a gate in the road just south of North Moelter. There have been several versions of the gate, including ones that lock.[2]

---

[1] Bridlewood members do not need to traverse North Moelter to access a public road. They already have access via a highway south of their condominiums.

[2] When Nielsen first purchased his home, the gate was a locked cattle gate secured between two fence posts. The cattle gate was later replaced with a locked, heavy chain. At some point during this litigation, the lock was removed. Nielsen did not have a key to the lock on the gate. Even without the lock, Nielsen testified that he could "[n]ot easily" remove the chain.

¶4 In 2019, Nielsen filed suit against Bridlewood over conditions of the private road. He claimed that: (1) Bridlewood was obligated to improve the road per a restrictive covenant in a document known as Certified Survey Map 1335 (CSM 1335); (2) Bridlewood was obligated to improve the road and contribute to its maintenance because the road's poor condition interfered with Nielsen's easement; and (3) Bridlewood's gate interfered with Nielsen's easement. Following a bench trial, the circuit court dismissed the first two claims but granted relief on the third. The court ordered Bridlewood to remove the gate and prohibited it from erecting another one in the road. This appeal and cross-appeal follow.

¶5 On appeal, Nielsen contends that the circuit court erred in dismissing his claims relating to the improvement and maintenance of the private road. We begin with his contention that Bridlewood was obligated to improve the road per a restrictive covenant in CSM 1335.

¶6 CSM 1335 was recorded with the Walworth County Register of Deeds in 1983 as part of the development of property that would later house the Bridlewood condominium project.[3] The document includes the following note: "IF ANY OF THE LOTS WITHIN THIS CERTIFIED SURVEY ARE DIVIDED, THE WALWORTH COUNTY PARK AND PLANNING COMMISSION WILL REQUIRE THAT THE PRIVATE ROAD BE IMPROVED TO MEET TOWNSHIP STANDARDS." The "private road" is Outlot 1/Moelter Drive.

---

[3] The Bridlewood condominium project was formed ten years later in 1993.

¶7 At trial, Nielsen argued that the above note was an unambiguous restrictive covenant that required Bridlewood to improve the private road to town standards. The circuit court disagreed, finding the note to be ambiguous and therefore unenforceable.[4] The interpretation of a restrictive covenant and the determination of whether it is ambiguous present questions of law that we review independently. *Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995).

¶8 Here, we agree with the circuit court's conclusion that the note is ambiguous and therefore unenforceable. On its face, the note does not require the owner of the private road to do anything. Rather, it indicates that, if a certain condition is met, a government entity will require the road to be improved to meet town standards. This language, according to a witness affiliated with the government entity,[5] did not have any "teeth[.]" Consequently, the court surmised that the intent of the note was simply "to flag the issue[.]" In light of the foregoing, we cannot say that the court erred in dismissing this claim.

¶9 We turn next to Nielsen's assertion that Bridlewood was obligated to improve the private road and contribute to its maintenance because the road's poor condition interfered with his easement. Nielsen bases this argument on equitable principles.

---

[4] "[A] restrictive covenant is only enforceable if it imposes the restriction by express terms." *Zinda v. Krause*, 191 Wis. 2d 154, 167, 528 N.W.2d 55 (Ct. App. 1995).

[5] The witness was Allen Morrison, chairman of the Park and Planning Commission that approved CSM 1335.

¶10    As a general rule, "the holder of an easement must repair the easement." *Shanak v. City of Waupaca*, 185 Wis. 2d 568, 584, 518 N.W.2d 310 (Ct. App. 1994).  The circuit court cited this rule in rejecting Nielsen's argument concerning Bridlewood's obligations.  It also noted that the lack of maintenance—as opposed to Bridlewood's use—was the reason for the private road's poor condition.

¶11    Whether a set of facts constitutes an unreasonable interference with an easement presents a question of law.  *Figliuzzi v. Carcajou Shooting Club of Lake Koshkonong*, 184 Wis. 2d 572, 590, 516 N.W.2d 410 (1994).  Although we typically review such questions independently, we give weight to the circuit court's conclusion because it is intertwined with factual findings supporting it.  *Id.*

¶12    Again, we agree with the circuit court's resolution of this issue.  As the owner of the private road, Bridlewood had no obligation to improve or maintain it for Nielsen's use.  *See Shanak*, 185 Wis. 2d at 584.  We see no reason to depart from this rule based on equitable principles.  After all, there was no evidence that Bridlewood members contributed to the deterioration of the road.  The facts at trial established that the road was primarily used by Nielsen, other North Moelter residents, and their visitors.[6]  Bridlewood members, by contrast, had not used the road for years and had no plans to do so in the future.

¶13    Finally, we turn to the cross-appeal of the circuit court ruling regarding Bridlewood's gate.  That ruling:  (1) recognized the gate to be an interference with Nielsen's easement; (2) required Bridlewood to remove it; and

---

[6] Periodically, other drivers would attempt to use the private road as well.  This was likely due to incorrect GPS mapping and cannot be attributed to Bridlewood.

(3) prohibited Bridlewood from erecting another one in the road. Bridlewood disputes that the gate interfered with Nielsen's easement and complains that the injunctive relief was improper.

¶14 As noted, whether a set of facts constitutes an unreasonable interference with an easement presents a question of law in which we give weight to the circuit court's conclusion. *Figliuzzi*, 184 Wis. 2d at 590. Meanwhile, we review a circuit court's grant of injunctive relief for an erroneous exercise of discretion. *Hoffmann v. Wisconsin Elec. Power Co.*, 2003 WI 64, ¶10, 262 Wis. 2d 264, 664 N.W.2d 55.

¶15 On this record, we are satisfied that Bridlewood's gate constituted an unreasonable interference with Nielsen's easement. Nielsen's easement permitted him the right to traverse the entirety of Outlot 1/Moelter Drive. Bridlewood's gate—particularly its prior locked versions—prevented him from doing so. The gate also created safety issues. Instead of being able to turn around in the dead-end cul-de-sac at the end of the road, vehicles trying to reach Nielsen's home were forced to back up and/or use someone's driveway on North Moelter to turn around due to the narrowness of the road. This could be challenging for larger vehicles.

¶16 We are also satisfied that the circuit court properly granted injunctive relief. In doing so, the court considered the history of the gate and the parties' inability to come up with a solution regarding it to ensure access to the private road. The court also considered Bridlewood's proffered reason for the gate

(i.e., to prevent speeding), which had thin testimonial support[7] and could be addressed by other means (e.g., putting in speed bumps). In the end, the court carefully reviewed the evidence and interests of the parties and issued a reasonable injunction to prevent future interference with Nielsen's easement. We decline to disturb its decision.[8]

¶17     For these reasons, we affirm.[9] We award no costs to the parties.[10]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] At trial, a Bridlewood member testified about one instance in which he witnessed a speeding car traveling through the development south of the gate. He also testified that his wife had relayed other instances to him too.

[8] Should the facts change in a way that alters the equitable analysis, the parties may seek to revisit the injunctive relief ordered in the circuit court.

[9] To the extent we have not addressed an argument on appeal, the argument is deemed rejected. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

[10] During briefing, Bridlewood moved for an award of its fees and costs, arguing that Nielsen's appeal was frivolous. Nielsen filed a response opposing the motion and requesting fees for having to answer it. We are not persuaded that Nielsen's appeal was frivolous within the meaning of WIS. STAT. RULE 809.25(3) (2019-20). Likewise, we are not persuaded that Nielsen should be awarded fees for answering the motion. Accordingly, we deny both Bridlewood's motion and Nielsen's request for fees.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.